**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **SCOTT A. PRIDEMORE,** ) | | |
|    Plaintiff ) | | |
| ) | | |
| v. ) | Civil Action No. 2:06cv00076 | |
| ) | **MEMORANDUM OPINION** | |
| ) | | |
| ) | | |
| **MICHAEL J. ASTRUE,**[1] ) | | |
|  **Commissioner of Social Security,** ) | By:   P<small>AMELA</small> M<small>EADE</small> S<small>ARGENT</small> | |
|    Defendant ) | United States Magistrate Judge | |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Scott A. Pridemore, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Pridemore protectively filed his applications for SSI and DIB on or about September 3, 2004, alleging disability as of April 1, 2003, based on arthritis, a bulging disc in his back, problems with his legs collapsing and the loss of use of his arm. (Record, ("R."), at 60-62, 96-97, 127, 307-10.)[2] The claims were denied initially and on reconsideration. (R. at 41-43, 47, 48-50, 312-16, 319-21.) Pridemore then requested a hearing before an administrative law judge, ("ALJ"). (R. at 51.) The ALJ held a hearing on February 15, 2006, at which Pridemore was represented by counsel. (R. at 369-84.)

By decision dated May 11, 2006, the ALJ denied Pridemore's claims. (R. at 20-27.) The ALJ found that Pridemore met the nondisability insured status requirements

---

[2]Pridemore filed prior applications for SSI and DIB on November 19, 2002, alleging disability as of September 11, 2002. (R. at 56-59, 67, 293-300.) These applications were denied initially and on reconsideration. (R. at 36-38, 302-04.) There is no indication that Pridemore pursued these claims.

-2-

of the Act for DIB purposes through September 30, 2007. (R. at 22.) The ALJ found that Pridemore had not engaged in substantial gainful activity at any time relevant to the decision. (R. at 22.) The ALJ found that the medical evidence established that Pridemore had severe impairments, namely musculoskeletal impairments and pulmonary impairments, but he found that Pridemore's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22-23.) The ALJ also found that Pridemore retained the functional capacity to perform the exertional demands of light[3] work, which did not require repetitive wrist bending activities and which did not require him to work around excessive heat or cold, humidity, dust or airborne respiratory irritants. (R. at 23.) Thus, the ALJ found that Pridemore could not perform any of his past relevant work. (R. at 25.) Based on Pridemore's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Pridemore could perform jobs existing in significant numbers in the national economy, including those of an usher, a ticket clerk, a telephone answerer, a greeter, a seated security guard and a counter clerk. (R. at 25-26.) Therefore, the ALJ found that Pridemore was not under a disability as defined in the Act, and that he was not eligible for benefits. (R. at 26-27.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2007).

After the ALJ issued his decision, Pridemore pursued his administrative appeals, (R. at 17), but the Appeals Council denied his request for review. (R. at 13-16.) Thereafter, by order dated December 22, 2006, the Appeals Council set aside its earlier action in order to consider additional information. (R. at 8-12.) However, after

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2007).

considering this additional information, the Appeals Council again denied Pridemore's request for review. (R. at 8-12.) Pridemore then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2007). The case is before this court on Pridemore's motion for summary judgment filed June 14, 2007, and on the Commissioner's motion for summary judgment filed August 16, 2007.

## *II. Facts*

Pridemore was born in 1976, (R. at 56, 293, 372), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Pridemore obtained his general equivalency development, ("GED"), diploma, and has past relevant work experience as an electrician's helper, a technician and a factory worker. (R. at 68, 73, 81, 372.) Pridemore stated that he was unable to work due to back problems, giving away of his legs, breathing problems, depression and carpal tunnel syndrome. (R. at 376.) Pridemore stated that he could sit for up to one hour without interruption. (R. at 377.) He stated that he could stand for up to three hours without interruption. (R. at 377.) Pridemore stated that he could occasionally lift items weighing up to 15 pounds. (R. at 377.) He stated that medication helped, but did not completely eliminate his symptoms. (R. at 380.)

Cathy Sanders, a vocational expert, also was present and testified at Pridemore's hearing. (R. at 381-83.) Sanders was asked to consider a hypothetical individual of Pridemore's age, education and work experience who could perform work at the light level of exertion, who could not be exposed to excessive dust, fumes,

-4-

chemicals and temperature extremes due to breathing problems and who could not repetitively bend his wrist in activities such as keyboarding or data entry. (R. at 382.) Sanders testified that such an individual could perform jobs such as an interviewer, a nonpostal mail clerk, a telephone answering service worker, a seated security gate guard, a greeter, a host, a ticket clerk, an usher and a counter clerk. (R. at 382-83.) Sanders testified that an individual with the limitations as set forth in psychologist Robert S. Spangler's assessment would not be able to perform the jobs previously mentioned. (R. at 383.)

In rendering his decision, the ALJ reviewed records from Dr. G. S. Kanwal, M.D.; Wal-Mart Pharmacy; ENT Associates of Kingsport, P.C.; Norton Community Hospital; Rite Aid Pharmacy; Dr. Mohammed A. Bhatti, M.D.; Dr. Kevin Blackwell, D.O.; Eugenie Hamilton, Ph.D., a state agency psychologist; Louis A. Perrott, Ph.D., a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. F. Joseph Duckwall, M.D., a state agency physician; and Robert S. Spangler, Ed.D., a licensed psychologist. Pridemore's attorney also submitted medical records from Norton Community Hospital; Dr. Bhatti; Dr. Uzma Ehtesham, M.D., a psychiatrist; and Dr. Kanwal to the Appeals Council.[4]

The record shows that Pridemore sought treatment from Dr. G. S. Kanwal, M.D., from November 2002 through October 2006 for various complaints such as chest pain, shortness of breath, back pain, anxiety, right arm pain and acid reflux

---

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 8-16), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-5-

disease. (R. at 143-70, 271-88, 365-68.) In April 2003, an MRI of Pridemore's lumbar spine showed minimal L3-L4 disc space narrowing and disc desiccation. (R. at 163.) Likewise, x-rays of Pridemore's lumbar spine showed minimal L3-L4 disc space narrowing. (R. at 164.) In August 2003, x-rays of Pridemore's dorsal spine showed mild lower thoracic spondylosis. (R. at 161.) On November 3, 2004, Pridemore reported no depression or anxiety. (R. at 145.) In February 2005, Pridemore reported that he occasionally worked as a mechanic. (R. at 144.) In March 2005, Pridemore reported that he was less anxious since taking Abilify. (R. at 143.) In February 2006, Dr. Kanwal completed a medical assessment indicating that Pridemore could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 282-85.) He indicated that Pridemore could stand and/or walk less than two hours in an eight-hour workday. (R. at 282.) Dr. Kanwal indicated that Pridemore must periodically alternate between sitting and standing. (R. at 283.) He indicated that Pridemore's ability to push and pull was limited, as was his ability to reach. (R. at 283-84.) He indicated that Pridemore should never climb, balance, kneel, crouch, crawl or stoop. (R. at 283.)

Dr. Kanwal also completed a mental assessment indicating that Pridemore's ability to understand, remember and carry out instructions was not impaired. (R. at 286-88.) He indicated that Pridemore had a satisfactory ability to interact appropriately with the public, with supervisors and with co-workers and to respond appropriately to changes in a routine work setting. (R. at 287.) He indicated that Pridemore was severely limited, but not precluded, in his ability to respond appropriately to work pressures. (R. at 287.)

Dr. Kanwal stated that Pridemore was nervous and depressed and "could not work in stress or hurry." (R. at 287.) Dr. Kanwal also stated, "he feels he can't work, is in pain and depressed." (R. at 287.) Dr. Kanwal did not, however, refer Pridemore for any psychological evaluation or treatment.

On December 6, 2002, Pridemore underwent a hearing test at ENT Associates of Kingsport, P.C. (R. at 174.) It was reported that Pridemore had borderline normal hearing bilaterally. (R. at 174.) It also was reported that Pridemore had good word discrimination bilaterally at a normal voice. (R. at 174.)

On May 29, 2003, Pridemore presented to the emergency room at Norton Community Hospital after cutting his hand on a metal piece of a car while at a junk yard. (R. at 175-78.) He was diagnosed with a laceration to the left hand. (R. at 176.)

The record shows that Pridemore sought treatment from Dr. Mohammed A. Bhatti, M.D., a neurologist, from January 2004 through August 2006 for various complaints including back pain, depression, neck pain and problems with his "legs giving away." (R. at 182-207, 238-46, 265-67, 347-49, 352-53.) An MRI of Pridemore's lumbar spine performed in January 2004 showed mild degenerative disc disease without focal disc herniation or significant central canal stenosis. (R. at 206.) In February 2004, a nerve conduction study showed mild L5-S1 nerve root irritation and a mild median nerve compression in Pridemore's left carpal tunnel. (R. at 193-94.) In March 2004, Pridemore reported that he continued to have back pain, particularly when working in the garage while "down on his knees." (R. at 192.) He reported that medication helped. (R. at 192.) In May 2004, Pridemore complained of

-7-

depression and tingling with numbness of both upper and lower extremities with severe back pain. (R. at 190.) He reported that he helped his neighbor change a septic tank and, since that time, had experienced more pain. (R. at 190.) Dr. Bhatti reported that Pridemore had normal strength in all four extremities. (R. at 190.) He diagnosed lumbosacral radiculopathy and cervical radiculopathy. (R. at 190.)

In June 2004, Pridemore reported that he had two episodes of his "legs giving away." (R. at 189.) Pridemore had normal strength in all extremities. (R. at 189.) Sensory examination showed no significant deficit. (R. at 189.) An MRI of Pridemore's brain showed chronic sinusitis. (R. at 203.) An MRI of Pridemore's cervical spine showed mild degenerative disc disease without focal disc herniation or significant central canal stenosis. (R. at 204.) Dr. Bhatti diagnosed lumbar radiculopathy. (R. at 189.) In August 2004, an MRI of Pridemore's thoracic spine showed edema in the end plates at the T9-10 disc space level, possibly due to Schmorl's nodes[5] and possible hemangioma at the anterior aspect of the sixth thoracic vertebral body. (R. at 200.) In November 2004, Pridemore complained of severe back pain. (R. at 185.) He reported that he was still working for a junk yard, which required him to lift engines and other auto parts. (R. at 185.) A bone scan of Pridemore's cervical, thoracic and lumber spine and pelvis was negative. (R. at 199.) In March 2005, an MRI of Pridemore's lumbar spine showed minimal degenerative disc disease without focal disc herniation or significant central canal stenosis. (R. at 195.) In June 2005, Pridemore reported that he was doing okay. (R. at 241.) In July 2005, Pridemore reported that his neck and back pain was reasonably controlled with

---

[5]Schmorl's nodes are irregular or hemispherical bone defects in the upper or lower margin of the body of the vertebra. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1143 (27th ed. 1988.)

medication. (R. at 240.) In August 2005, Pridemore reported that he was doing okay. (R. at 239.) In January 2006, Dr. Bhatti completed a form stating that Pridemore's condition met or equaled the medical listing § 1.04(A). (R. at 265.) This form does not indicate the medical evidence which supports this finding.

On December 17, 2004, Dr. Kevin Blackwell, D.O., examined Pridemore for complaints of back pain and leg weakness. (R. at 212-17.) Pridemore had normal range of motion in all areas. (R. 216-17.) Dr. Blackwell reported that Pridemore was in no acute distress and had good mental status. (R. at 213.) Dr. Blackwell diagnosed chronic low back pain and carpal tunnel syndrome. (R. at 214.) Dr. Blackwell reported that Pridemore could occasionally lift and carry items weighing up to 75 pounds and frequently lift and carry items weighing up to 45 pounds. (R. at 214.) He reported that Pridemore could sit and/or stand for up to eight hours in an eight-hour workday. (R. at 214.) Dr. Blackwell reported that Pridemore could squat, kneel and crawl. (R. at 214-15.) He reported that Pridemore was limited in his ability to perform repetitive wrist bending activities. (R. at 215.)

On December 29, 2004, Eugenie Hamilton, Ph.D., a state agency psychologist, indicated that Pridemore suffered from a nonsevere anxiety-related disorder. (R. at 218-30.) Hamilton did not note any limitations. This assessment was affirmed by Louis A. Perrott, Ph.D., another state agency psychologist, on March 22, 2005. (R. at 218.)

On December 29, 2004, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Pridemore had the residual functional capacity to perform

-9-

Case 2:06-cv-00076-PMS Document 17 Filed 10/02/07 Page 9 of 18 Pageid#: 119

medium work.[6] (R. at 231-37.) Dr. Surrusco indicated that Pridemore's ability to push and/or pull with his upper extremities was limited. (R. at 232.) Dr. Surrusco opined that Pridemore could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 233.) He further opined that Pridemore was limited to occasionally reaching in all directions bilaterally. (R. at at 233.) No visual, communicative or environmental limitations were noted. (R. at 233-34.) This assessment was affirmed by Dr. F. Joseph Duckwall, M.D., another state agency physician, on April 11, 2005. (R. at 236.)

On October 17, 2005, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Pridemore at the request of Pridemore's attorney. (R. at 251-57.) Pridemore demonstrated good concentration. (R. at 251.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Pridemore obtained a verbal IQ score of 91, a performance IQ score of 95 and a full-scale IQ score of 93, which indicated that Pridemore had an average range of intellectual abilities. (R. at 254.) Spangler diagnosed nicotine dependence and borderline personality disorder. (R. at 254-55.) Spangler specifically stated that Pridemore did not suffer from any psychological diagnosis or condition. (R. at 254.) Spangler indicated that Pridemore had a Global Assessment of Functioning, ("GAF"), score of 75.[7] (R. at 255.)

---

[6]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2007).

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors ...; no more than slight impairment in social, occupational, or school functioning...." DSM-IV at 32.

Spangler completed a mental assessment indicating that Pridemore had an unlimited ability to follow work rules and to understand, remember and carry out simple job instructions. (R. at 258-60.) He indicated that Pridemore had a limited, but satisfactory, ability to interact with supervisors, to deal with work stresses, to function independently, to maintain attention/concentration and to understand, remember and carry out detailed instructions. (R. at 258-59.) Spangler indicated that Pridemore had a limited, but satisfactory, ability to a seriously limited, but not precluded, ability to maintain personal appearance and to behave in an emotionally stable manner. (R. at 258-59.) He indicated that Pridemore had a seriously limited, but not precluded, ability to relate to co-workers, to deal with the public, to use judgment, to understand, remember and carry out complex instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 258-59.) Spangler stated that these limitations were as a result of Pridemore's personality disorder and his complaints of chronic fatigue. (R. at 258-59.)

The record shows that Pridemore received treatment from Dr. Uzma Ehtesham, M.D., a psychiatrist, from June 2006 through September 2006. (R. at 354-64.) On June 28, 2006, more than a month after the ALJ's decision, Dr. Ehtesham diagnosed major depressive disorder and ruled out bipolar disorder. (R. at 363-64.) Dr. Ehtesham indicated that Pridemore had a GAF score of 60.[8] (R. at 364.) In August 2006, Dr. Ehtesham completed a mental assessment indicating that Pridemore had a seriously limited, but not precluded, ability to understand, remember and carry out simple and detailed instructions, to interact appropriately with the public and to interact

---

[8] A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-11-

appropriately with supervisors. (R. at 354-56.) Dr. Ehtesham indicated that Pridemore had no useful ability to understand, remember and carry out detailed instructions, to make judgments on simple work-related decisions, to interact appropriately with co-workers, to respond appropriately to work pressures and to respond appropriately to changes in a routine work setting. (R. at 354-55.)

In September 2006, Dr. Ehtesham completed a mental assessment indicating that Pridemore had a severely limited, but not precluded, ability to understand, remember and carry out simple and detailed instructions, to make judgments, to interact appropriately with the public, with supervisors and with co-workers and to respond appropriately to work pressures. (R. at 357-59.) Dr. Ehtesham indicated that Pridemore had no useful ability to respond appropriately to changes in a routine work setting. (R. at 358.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a),

416.920(a) (2007).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 11, 2006, the ALJ denied Pridemore's claims. (R. at 20-27.) The ALJ found that the medical evidence established that Pridemore had severe impairments, namely musculoskeletal impairments and pulmonary impairments, but he found that Pridemore's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22-23.) The ALJ also found that Pridemore retained the functional capacity to perform the exertional demands of light work, which did not require repetitive wrist bending activities and which did not require him to work around excessive heat or cold, humidity, dust or airborne respiratory irritants. (R. at 23.) Thus, the ALJ found that Pridemore could not perform any of his past relevant work. (R. at 25.) Based on Pridemore's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Pridemore could perform jobs existing in significant numbers in the national economy, including those of an

Case 2:06-cv-00076-PMS   Document 17   Filed 10/02/07   Page 13 of 18   Pageid#: 123

usher, a ticket clerk, a telephone answerer, a greeter, a seated security guard and a counter clerk. (R. at 25-26.) Therefore, the ALJ found that Pridemore was not under a disability as defined in the Act, and that he was not eligible for benefits. (R. at 26-27.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2007).

Pridemore argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-9.) Pridemore also argues that the ALJ erred by failing to adhere to the treating physician rule and give controlling weight to the opinions of Dr. Kanwal. (Plaintiff's Brief at 9-12.) Pridemore further argues that the ALJ erred by finding that his condition did not meet or equal the listed impairment for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. (Plaintiff's Brief at 12-15.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical

-14-

evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Pridemore argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2007). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2007). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

While Spangler placed limitations on Pridemore's ability to perform

occupational, performance and personal-social skills, the ALJ rejected this assessment because it was not consistent with his own narrative report nor with the record.[9] (R. at 25.) Spangler diagnosed nicotine dependence and borderline personality disorder. (R. at 254-55.) Spangler also specifically stated that Pridemore did not suffer from a psychological diagnosis or condition. (R. at 254.) Spangler also indicated that Pridemore had a GAF score of 75, indicating no more than a slight impairment in social, occupational or school functioning. (R. at 255.) The ALJ also noted that Pridemore had never sought psychological counseling. (R. at 25.) In addition, the state agency psychologists found that Pridemore did not have any mental impairment that constituted a severe mental impairment. (R. at 218-30.) Based on this, I find that substantial evidence exists in the record to support the ALJ's finding that Pridemore did not suffer from a severe mental impairment. I note that, while Dr. Ehtesham did diagnose Pridemore with major depressive disorder, this did not occur until more than a month after the ALJ's decision. (R. at 363-64.) Furthermore, Dr. Ehtesham's assessment dates from three months after the ALJ's decision. (R. at 354-56.)

Based on my review of the evidence, I also find that substantial evidence exists in this record to support the ALJ's finding that Pridemore's condition did not meet or equal the impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04(A). To meet § 1.04(A), a claimant must suffer from either a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral fracture, resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic

---

[9]The ALJ makes reference to Norman Hankins evaluating Pridemore on October 17, 2005, and assessing a GAF score of 75. (R. at 25.) Apparently, the ALJ is referring to Spangler, who evaluated Pridemore on October 17, 2005, and assessed a GAF score of 75. (R. at 251-57.)

distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2007). Also, the regulations specifically state that the responsibility for determining whether a claimant's condition meets or equals a listed impairment rests with the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2007). Based on my review of the evidence, I find that substantial evidence exists to support the ALJ's finding that Pridemore's condition did not meet § 1.04(A). The objective evidence of record does not demonstrate evidence of nerve root compression, limitation of motion of the spine, motor loss or positive straight leg raising. In fact, MRIs of Pridemore's lumbar, cervical and thoracic spine showed only mild degenerative disc disease with no focal herniations, no significant central canal stenosis and no nerve root compression. (R. at 195, 200, 204, 206.) Physical examinations showed normal muscle strength in all four extremities. (R. at 189, 190, 214, 245.) Therefore, I find that substantial evidence exists in the record to support the ALJ's finding that Pridemore's condition did not meet or equal § 1.04(A).

Finally, Pridemore argues that the ALJ erred by failing to adhere to the treating physician rule and give controlling weight to the opinions of Dr. Kanwal. Under 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ must give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. The ALJ gave little weight to the assessments of Dr. Kanwal, Spangler and Dr. Bhatti because they were not supported by their own medical findings and because they were inconsistent with the record as a whole. (R. at 25.) The ALJ relied upon the

-17-

assessments of Dr. Blackwell and the state agency physicians and psychologists, as well as Pridemore's activities of daily living in determining Pridemore's residual functional capacity. (R. at 25.) Thus, I find that the ALJ properly weighed the evidence of record.

*IV. Conclusion*

For the foregoing reasons, Pridemore's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted, and the Commissioner's decision denying benefits will be affirmed.

I further deny Pridemore's request to present oral argument based on my finding that it is not necessary in that the parties have more than adequately addressed the relevant issues in their written arguments.

An appropriate order will be entered.

DATED:    This 2nd day of October 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE